IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Kandice McSwain, as Personal Representative of the Estate of Torrence C. McSwain, Plaintiff, | ) | No. 7:25-cv-00407-DCC |
| v. | ) | **OPINION AND ORDER** |
| HOMAG Machinery North America, Inc. and Stiles Machinery, Inc. Defendants. | ) | |

This matter comes before the Court on Plaintiff's Motion to Compel. ECF No. 22. Defendant Stiles Machinery, Inc. ("Stiles") filed a Response in Opposition, and Plaintiff filed a Reply. ECF Nos. 24, 27. For the following reasons, Plaintiff's Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff initiated this action on November 11, 2024, in the Spartanburg County Court of Common Pleas, and it was removed to this Court on January 21, 2025. *See* ECF No. 1. Plaintiff asserts claims against Defendants for product liability and wrongful death, which arise out of a workplace fatality that occurred on February 1, 2024. *See* ECF No. 1-1. Torrence C. McSwain ("Decedent") was diagnosing a repair on an industrial panel saw (the "Saw") when another employee turned off power to the Saw, not realizing that it would cause the motor to drop. *See id.* at 7–9. When power was lost to the Saw, its motor was forced down onto Decedent who was performing repairs, causing his death (the "Incident"). *See id.* The Saw was allegedly purchased from Defendants, who

delivered, assembled, and/or installed the Saw and serviced it on several occasions and provided replacement parts since its installation. *Id.* at 5.

On January 29, 2025, Plaintiff served Defendants with her first Interrogatories and Requests for Production. *See* ECF Nos. 22 at 4; 22-1. Defendants filed their initial answers on April 18, 2025. *See id.* Plaintiff made the following requests and Stiles made the following initial responses relevant to this Motion:

> 2. All correspondence, reports, charts, photographs, videos, data, charts, surveys, statements, maps, brochures, manuals, animations, drawings, brochures, memoranda, notes or other documents, materials or physical evidence of any kind regarding the Subject Machine, the Subject Incident, or the claims or defenses in this case.
>
> RESPONSE: Please see documents labeled for production as DEFENDANTS 0001- 1234.
>
> . . .
>
> 5. All correspondence, written communications, texts, e-mails, phone logs, messages, or any other format whatsoever between Defendants and any third party, including but not limited to, family members, law enforcement, investigators, or employees regarding the Subject Machine or Subject Incident.
>
> RESPONSE: Please see materials labeled for production as DEFENDANTS 0001- 1234.
>
> 6. All text messages, emails, social media messages, or other documents exchanged between Defendants and any other person (other than counsel) which in any way references or relates to the Subject Machine or Subject Incident.
>
> RESPONSE: Please see materials labeled for production as DEFENDANTS 0001- 1234.

ECF Nos. 22 at 5; 22-1 at 17–19. Stiles did not object to Plaintiff's requests based on attorney-client privilege or work product doctrine at the time of its initial responses nor did Stiles produce any privilege log at that time. ECF No. 22 at 5.

Included in Stiles' initial production were numerous emails that included its general counsel, Mike Callahan. *See* ECF Nos. 22 at 5–6; 22-2 at 1–20. Relevant to this Motion, Plaintiff specifically cites the email found at Defendants 1140, which involved correspondence between Mr. Callahan and Brett Silva, an employee of Stiles tasked with investigating the Incident, sent on February 16, 2024. ECF No. 22 at 6. In this email, Silva and Mr. Callahan discuss whether the manual for the Saw or any other document or label indicates that the carriage will drop if/when power is removed. *See* ECF Nos. 22 at 6; 22-2 at 18.

On May 22, 2025, Stiles first produced a privilege log at Plaintiff's request. *See* ECF No. 22 at 5 n.4; 22-3; 24 at 5. This privilege log listed two items concerning redactions found at Defendants 1123 and 1225.[1] ECF Nos. 22 at 5; 22-3. On August 7, 2025, Stiles produced additional emails and provided no privilege log with this supplemental production. ECF No. 22 at 6. Included in Stiles' supplemental production was an email dated February 9, 2024, between Stiles' insurance provider, Marsh, to members of the Dürr Group that contained what is purportedly a screenshot from another email or document prepared by Mr. Callahan. *See* ECF No. 22 at 6–7; 22-5. The email provided as follows:

> Hello Bernd,

[1] Plaintiff states that she does not challenge the claimed privilege over Defendants 1123 and 1225, nor does she move to compel production of the same. ECF No. 22 at 5 n.4.

> Enclosed is information about a fatality in the USA involving a Stiles/Homag machine that occurred on February 1, 2024. We also received the following additional description of the damage.
>
> [Screenshot from Mike Callahan email/document providing summary of the Incident].
>
> As of today, this is a case for local police in the USA, but due to the death, it could have wider repercussions.
> Are you familiar with this case? Best regards.

ECF Nos. 22 at 7, 7 n.5; 22-5.[2] The source document of the screenshot summary from Mr. Callahan that was included in this email exchange has not been produced to Plaintiff. ECF No. 22 at 7.

On September 23, 2025, a telephone discovery conference was held with the undersigned, in accordance with the Court's preferences, concerning a potential dispute. ECF No. 23. On September 27, 2025, Stiles produced a supplemental privilege log, which included two new entries that provided as follows:

> Two email chains containing five attached email chains provided by Defendants' foreign, parent company sent to the Defendants' general counsel, Mike Callahan. These communications contain discussions of the factual circumstances of the subject incident and related discussions between employees and legal counsel for a foreign, parent company, and were sent to Mr. Callahan at his request.
>
> Email chain between Defendants' general counsel and insurance broker discussing details of subject incident, legal opinions, and anticipated litigation.

ECF Nos. 22 at 7–8; 22-6.

[2] The original email exchange, except for the portion from Mr. Callahan, was sent in German. *See* ECF Nos. 22 at 7; 22-5. Plaintiff provided a translation of the email in English, the accuracy of which has not been contested by Stiles. *See* ECF Nos. 22 at 7 n.5; 24. For simplicity, the Court has included the English translation in this Order.

On October 8, 2025, Plaintiff filed the instant Motion to Compel, seeking "all internal communications, emails, or memoranda relating to the incident involving Casey McSwain; Stiles' investigation into the incident; and Stiles' findings, conclusions, or summaries regarding the same, prior to March 1, 2024." ECF No. 22 at 15. On October 22, 2025, Stiles filed its response in opposition, and on October 28, 2025, Plaintiff filed her Reply, amending her request to include all documents as described above prior to April 12, 2024, and production of Items 3 and 4 on Stiles' supplemental privilege log, regardless of their date. ECF Nos. 24; 27 at 2 n.1, 5, 5 n.4. Upon review of the Parties' briefing as well as the attached, it remained unclear to the Court whether attorney-client privilege, and subsequently any of waiver of that privilege, applied to the communications at issue. Accordingly, the Court directed Stiles to produce certain documents for in-camera review. ECF No. 37. Stiles did so, and the Court has reviewed the produced materials in camera. The Motion is now ripe for review.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A matter is relevant if it has any tendency to make a fact of consequence to the action more or less probable than it would be otherwise. Fed. R. Evid. 401. The district court may broadly construe this and the other rules enabling discovery, but it "must limit the frequency or extent of discovery otherwise allowed" if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; if the requesting party "has had ample opportunity to obtain the information

by discovery in the action"; or if it is otherwise "outside the scope permitted by Rule 26(b)(1)." Fed R. Civ. P. 26(b)(2). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1993).

It is against the backdrop of broad discovery that claims of privilege are evaluated. To establish protection by the attorney-client privilege, the privilege's proponent must demonstrate the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Tedder*, 801 F.2d 1437, 1442 (4th Cir. 1986) (internal citation omitted).[3] In diversity cases, the application of the attorney-client privilege is governed by state law—in this case, the law of South Carolina. *See* Fed. R. Evid. 501; *Hottle v. Beech*

[3] As noted herein, diversity cases require the Court to apply the state law of attorney-client privilege. While the elements of attorney-client privilege as cited here are from the federal court, the Parties appear to agree that this is the applicable standard and there are no arguments from either Party that a different analysis need be undertaken as to the state-law claims. *See, e.g.*, ECF Nos. 22 at 8; 24 at 2; *see also ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 613–14 (D.S.C. 2017) ("The privilege consists of the following essential elements: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." (citing *Tobaccoville USA, Inc. v. McMaster*, 692 S.E.2d 526, 529–30 (S.C. 2010))).

*Aircraft Corp.,* 47 F.3d 106, 107 n.5 (4th Cir. 1995). "The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." *State v. Owens,* 424 S.E.2d 473, 476 (S.C. 1992). The privilege is strictly construed to protect only confidences disclosed within the relationship. *Id.* at 477 (citing *State v. Doster,* 284 S.E.2d 218 (S.C. 1981)). "[T]he burden of establishing the [attorney-client] privilege rests upon the party asserting it." *Wilson v. Preston,* 662 S.E.2d 580, 585 (S.C. 2008). "The attorney-client privilege belongs to the client and not the attorney and may be waived only by the client." *Id.* (citing *Tucker v. Honda of South Carolina Mfg., Inc.,* 582 S.E.2d 405 (S.C. 2003)).

## III. DISCUSSION

Plaintiff argues that Stiles should be compelled to produce several documents based on (1) subject matter waiver of attorney client privilege based upon the production of privileged materials; and (2) waiver of attorney client privilege based on Stiles' failure to object on the basis of privilege based in part on Stiles' untimely and deficient privilege log. ECF No. 22 at 8–14. The Court addresses these arguments in turn below.

### A. Subject Matter Waiver

Under the subject matter waiver doctrine, "[t]he voluntary waiver by a client . . . of one or more privileged documents passing between a certain attorney and the client discussing a certain subject waives the privilege as to all communications between the same attorney and the same client on the same subject made before the privileged document was voluntarily waived."[4] *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp.

[4] As Plaintiff recognizes, any subject matter waiver applies only to documents and communications that predate the date of the disclosed communication. *See* ECF No. 22 at 9; *Duplan Corp.*, 397 F. Supp. at 1191 ("To establish a waiver of all later generated

1146, 1191 (D.S.C. 1974). However, the production "of one or more nonprivileged documents passing between the same attorney and the same client discussing the same subject does not waive the privileged communications between the same attorney and the same client on the same subject." *Id.*

Plaintiff contends that the documents produced by Stiles contain privileged communications, specifically pointing to two separate email chains. *See* ECF No. 22 at 6–7, 10–11, 13. Stiles contends that its previous production did not contain any privileged communications, so there has been no waiver of attorney client privilege, much less subject matter waiver, based on this production. ECF No. 24 at 2–4. Specifically, Stiles argues that these communications all "pre-date the retention of litigation counsel and simply gather information pertaining to the subject incident," and, thus, they were not privileged. *Id.* at 5, 6.

As an initial matter, the Court must determine whether the produced documents are privileged. As to the first set of emails produced by Stiles, referred to by the Parties as Plaintiff's Exhibit 2, the Court finds these documents do not contain privileged communications. *See* ECF Nos. 22 at 11, 14; 22-2; 24 at 3. These communications may be relevant to the subject of this litigation, and it is undisputed that Mr. Callahan, as general counsel for Stiles, is the sender and/or recipient of some of these communications. However, it does not appear that these communications were made for the primary purpose of securing the advice or opinion of legal counsel or with regards to a legal proceeding. Rather, the communications were primarily for the purpose of

privileged documents would effectively disallow the parties from forever thereafter discussing the same subject matter in any other privileged context.").

gathering information for the company's internal investigation of the Incident and include attachments and forms that are clearly not privileged. Even on the occasion when Mr. Callahan indicated in a message thread that he wanted to be copied on certain communications in case litigation arose, this statement was not made by Mr. Callahan until after the communications had already been made by the other parties. *See* ECF No. 22-2 at 12–13. Accordingly, the Court does not find that these communications were made for the purpose of securing legal advice or opinion from him or in preparation for an anticipated legal proceeding. *See Hawkins*, 148 F.3d at 383–84 (setting out the "classic test" for attorney-client privilege, which explains that attorney-client privilege attaches only to communications that were, and are, intended by the *client* to be kept confidential indefinitely); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355–56 (4th Cir. 1984) (describing the very "essence" of the attorney-client privilege as the client's intention that the communication remain confidential); *United States v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir. 1984) ("Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client, agents, or superiors or to other lawyers in the case of joint representation, if those communications reveal confidential client communications . . . . However, the privilege protects only confidential client communications; that is, communications not intended to be disclosed to third persons other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means." (citations omitted)). Because the initial communications in Plaintiff's Exhibit 2, as produced by Stiles, are not privileged, the Court finds that there is no subject matter waiver of attorney client privilege based on this production.

Turning to what the Parties refer to as Plaintiff's Exhibit 5, which contains an email dated February 19, 2024, from Stiles' supplemental production, Plaintiff takes issue with a screenshot included in this email that contains a summary of the events underlying the Incident. ECF No. 22 at 6–7, 13. Plaintiff contends that the inclusion of this screenshot in the produced email constitutes a "subject matter waiver." *Id.* at 13. The Court disagrees that this production constitutes a subject matter waiver in the broad sense that it would compel Stiles to produce all related communications in the same time frame because the underlying produced communication was not privileged for the same reasons outlined above as this email chain was part of the initial investigation and not for the primary purpose of securing legal advice from counsel.[5]

**B. Privilege Log**

Plaintiff argues that Stiles' privilege log is deficient and does not allow Plaintiff to determine whether the underlying documents listed on the log are privileged. ECF No. 22 at 13. Plaintiff further contends that Stiles' assertions of privilege over the documents has been waived because Stiles failed to timely object to Plaintiff's discovery requests on this basis. *Id.* at 14. Stiles argues that it has not waived privilege based upon the privilege logs in this action because the logs are not deficient and any prejudice to Plaintiff caused by an alleged delay in producing a privilege log was minimal and that it provided a

[5] Plaintiff also raises the inclusion of a screenshot summary in the disputed email chains as a basis for finding that Stiles included privileged communications in its production marked as Plaintiff's Exhibit 5 and, thus, that subject matter waiver should apply. *See* ECF No. 22 at . As addressed more fully below, the apparent source of this screenshot was included in Stiles' privilege log, which the Court has now reviewed in camera and found was not a privileged communication. Accordingly, inclusion of the screenshot summary in Plaintiff's Exhibit 5 did not equate to subject matter waiver because the underlying source of this screenshot was not privileged.

privilege log and the email threads at issue did not come into counsel's possession until August 8, 2025. ECF No. 24 at 4–7. Stiles further claims that it was not required to disclose the existence of this privileged information under South Carolina law. *See id*. at 7–8.

1. <u>The Sufficiency of Stiles' Privilege Log</u>

As an initial matter, Stiles mistakes the extent to which South Carolina law governs the conflict over its privilege log. In *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 (1938), the Supreme Court held that federal courts sitting in diversity must apply state substantive law. Under the *Erie* Doctrine, "a federal court is to apply state substantive law and federal procedural law in diversity cases." See *Hottle*, 47 F.3d at 109 (citing *Stonehocker v. General Motors Corp.,* 587 F.2d 151, 154 (4th Cir. 1978)). Assertion of attorney-client privilege requires a party to satisfy both procedural and substantive criteria. *See N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011). In claiming that the privilege applies, Stiles is correct that the Court's assessment of whether attorney-client privilege applies to the documents at issue is governed by South Carolina law. *See Interbake*, 637 F.3d at 501 (citing *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982)); *see also* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). However, the production of a privilege log asserting attorney-client privilege over certain documents in order to withhold that information from discovery is procedural and, therefore, governed by federal law. *See Interbake*, 637 F.3d at 501; *see also Jones v. Bank of Am., N.A.*, No. 3:14-CV-11531, 2015 WL 1808916, at *3 (S.D.W. Va. Apr. 21, 2015) (applying state law to determine whether attorney-client privilege attaches but Federal Rule of Civil Procedure 26 to

determine whether the party's privilege log was sufficient); *State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, No. CV 4:15-2745-RMG, 2016 WL 4051271 (D.S.C. July 25, 2016) (same). Accordingly, the Court applies federal law to determine whether Stiles' privilege log was sufficient.

Because federal law applies, Stiles was required to timely disclose information it withheld from discovery based on attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(5)(A) (requiring parties seeking withhold information from discovery on the basis of an asserted privilege to (1) "expressly make the claim," and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"). "A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *Sky Angel US, LLC v. Discovery Communications, LLC,* 28 F.Supp.3d 465, 483 (D. Md. 2014).

A party's conclusory assertion that a document is privileged is inadequate to meet the burden imposed by Rule 26(b)(5)(A). *See United Stationers Supply Co. v. King,* No. 5:11–CV–00728, 2013 WL 419346, at *2 (E.D.N.C. Feb. 1, 2013). Rather, the party's privilege log "must set forth specific facts which, taken as true, establish the elements of the privilege for each document for which privilege is claimed. A privilege log meets this standard, even if not detailed, if it identifies 'the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege

asserted.'" *Clark v. Unum Life Ins. Co. of Am.,* 799 F. Supp. 2d 527, 536 (D. Md. 2011) (quoting *Interbake Foods,* 637 F.3d at 502); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.,* 250 F.R.D. 251, 264 (D. Md. 2008) (noting that privilege logs typically require "information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter"); Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and Their Solutions,* 62–64 (2005) ("To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, and for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met for that document.").

As outlined above, Stiles' most recent privilege log was provided to Plaintiff on September 26, 2025, and only the following entries on that log are in dispute: "Two email chains containing five attached email chains provided by Defendants' foreign, parent company sent to the Defendants' general counsel, Mike Callahan. These communications contain discussions of the factual circumstances of the subject incident and related discussions between employees and legal counsel for a foreign, parent company, and were sent to Mr. Callahan at his request."; and "Email chain between Defendants' general counsel and insurance broker discussing details of subject incident, legal opinions, and anticipated litigation." *See* ECF Nos. 22, 24, 27. While the privilege log generally provides sufficient information regarding the nature of the privilege claimed,

the name of the person making/receiving the communication, and the document's general subject matter, there is no information about the date and place of the communication, which the Court finds to be of particular importance based on the Parties' arguments concerning this discovery dispute. *See Sky Angel US,* 28 F.Supp.3d at 483; *Clark,* 799 F. Supp. 2d at 536. Indeed, Stiles relied on the date of other, seemingly similar, communications in arguing that privilege did not apply and therefore was not waived. *See* ECF No. 24 at 6. Upon review, the Court finds that these disclosures on Stiles' privilege log are insufficient to allow Plaintiff to determine whether Stiles has properly asserted privilege over these documents.

2. <u>What Remedy is Appropriate</u>

"When a party provides an inadequate or untimely privilege log, the Court may choose between four remedies: (1) give the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect in camera all of the withheld documents; and (4) inspect in camera a sample of the withheld documents." *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 538 (D.S.C. 2018) (citation omitted); *see also Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 234–35 (S.D.W. Va. 2015) (citation omitted).

Plaintiff urges the Court to find that Stiles has forfeited its claim of privilege as to documents covered by the two entries at issue on the log. *See* ECF No. 22 at 13–14. Certainly, that sanction is available, but "[g]iven the sanctity of the attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith." *Id.* at 235 (citations omitted). The Court must consider whether the "extreme sanction of waiver" is

appropriate in this case. As to delay, it is clear that Stiles misunderstood its obligation to disclose this information in a privilege log and attempted to remedy its log upon Plaintiff's request. Counsel for Stiles also represent that they did not receive the underlying documents referenced by these two entries from their client until August 8, 2025. *See* ECF No. 24 at 5. Under these circumstances, the Court does not find that any delay in producing a privilege log was unjustified or done in bad faith. Likewise, while Stiles should have realized its document descriptions were inadequate by not including the date and time of the communications, especially in light of its earlier productions, Stiles included sufficient detail in almost all other aspects and the Court finds Stiles did not act in bad faith in omitting this information from the log. Further, the updated privilege log was provided to Plaintiff while discovery was still ongoing and there has been no assertion of prejudice by Plaintiff based on Stiles' delay. *See* ECF No. 22, 27. Accordingly, the Court finds that the current circumstances do not justify application of the harshest remedy and waiver of privilege is not an appropriate sanction at this juncture. Rather, given the procedural posture of this case and that Stiles has already provided the documents at issue to the Court for in-camera review, the Court finds that in-camera review is the most appropriate remedy for Stiles' inadequate log.

Turning to the first entry at issue, which includes "[t]wo email chains containing five attached email chains provided by Defendants' foreign, parent company sent to the Defendants' general counsel, Mike Callahan," Plaintiff argues that these documents are not privileged because they involve communications with Stiles' parent company. ECF No. 22 at 13. Plaintiff relies on Stiles' previous production of communications where members of the Dürr Group to argue that Stiles cannot now assert privilege over these

other communications involving a parent company. *Id*. However, as the Court outlined above, the previous production did not waive attorney-client privilege because the communications in these documents were not made for the purpose of obtaining legal advice—not because the communications involved a "third party." Indeed, a parent company may constitute a privileged party for the purpose of determining whether attorney-client privilege attaches to a communication. *See In re Grand Jury Subpoena #£06-1*, 274 F. App'x 306, 311 (4th Cir. 2008) ("[A] number of courts have held that close corporate affiliation, including that shared by a parent and a subsidiary, suffices to render those entities 'joint clients' or 'co-clients,' such that they may assert joint privilege in communications with an attorney pertaining to matters of common interest."); *In re Nucletron Mfg. Corp.*, No. BANKR. 93-34486S, 1994 WL 16191611, at *2 (Bankr. E.D. Va. Mar. 17, 1994) (recognizing that "courts have held that communications between related corporate entities are privileged" (collecting cases)). The Court finds that the involvement of a parent company in these communications did not result in the waiver of privilege over these communications because these entities share a common legal interest in these communications. *See, e.g.*, *Duplan Corp. v. Deering Milliken, Inc.,* 397 F. Supp. 1146, 1185 (D.S.C. 1974) ("If any communication is made among Chavanoz, its parent, affiliates, and/or subsidiaries for which an attorney-client privilege is claimed, there is no waiver of the privilege. If any communication is made among ARCT-France and/or its subsidiaries for which an attorney-client privilege is claimed, there is likewise no waiver of the privilege because, for all practical purposes, the corporate communicants are identical, although they are legally different.").

Further, upon in-camera review of these emails, it appears that the underlying communications were made after the retention of outside legal counsel and were for the purpose of securing legal services or assistance related to the anticipated litigation. Accordingly, the Court finds that Stiles has properly asserted privilege over the two underlying email chains identified in the first entry on the privilege log, and Plaintiff's request to produce these email chains is denied.

However, while the underlying communications are privileged, the Court finds that some of the documents attached to these communications are not privileged and must be produced. The majority of these attachments are merely factual communications between employees regarding the underlying Incident, and there is no indication that, at the time when they were made, these communications were made for purpose of obtaining legal advice.[6] A party cannot make a pre-existing, non-privileged document or business email privileged by copying or forwarding it to counsel. *See Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.,* 143 F.R.D. 601, 607 (M.D.N.C. 1992) ("[A] document, which is not privileged in the hands of the client, will not be imbued with the privilege merely because the document is handed over to the attorney."). However, two specific attachments, the third attachment to the document identified as "Court Order 3(a)(1)" and the second attachment to document identified as "Court Order 3(a)(2),"

[6] The Court finds this to be especially true, even where counsel may be party to the attached documents, as the communications in these attachments "pre-date[d] the retention of litigation counsel and simply gather[ed] information pertaining to the subject incident." *See* ECF No. 24 at 6. To be even-handed in the treatment of documents in this action, the Court finds that based on its finding and Stiles' assertions that such communications were not privileged, the attachments are also not privileged and must be produced.

appear to be emails that specifically address Stiles' anticipation of litigation in this action and contain legal advice on this matter from counsel. The Court finds that these attachments are privileged and need not be produced by Stiles. All other attachments to the emails identified in the first entry are not privileged and must be produced to the extent that they have not been already.[7]

Turning to the second entry on the privilege log, "Email chain between Defendants' general counsel and insurance broker discussing details of subject incident, legal opinions, and anticipated litigation," upon review of the in-camera production by Stiles, it appears that these communications between the general counsel and its broker all occurred in February of 2024. As set out above, Stiles asserted that communications within this same time frame pre-dated the retention of litigation counsel, i.e., before it "anticipated litigation." ECF No. 24 at 5, 6. Further, based on the Court's in-camera review, these communications contain a notice of loss to the insurance broker and references to the policy.[8] There do not appear to be any legal impressions or advice

[7] Upon the Court's review, it appears that portions of these attachments and documents attached to these attachments have already been produced to Plaintiff. Additionally, from the Court's review, it does not appear that any of the attachments contain copies of the privileged, underlying emails or responses thereto. However, to the extent that they do, these may be appropriately redacted to preserve privilege.

[8] It appears that Stiles relies on the common interest rule to protect these communications, which occurred between Mr. Callahan and Stiles' insurance provider. Stiles is correct that privilege is not necessarily waived by including an insurance provider in otherwise privileged communications under this doctrine. *See, e.g. State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, 225 F. Supp. 3d 474, 482 (D.S.C. 2016) (explaining that the common interest doctrine protects transmission of data to which attorney-client privilege has attached "when it is shared between parties with a common interest in a legal matter" and this doctrine "is an exception to the general rule that disclosure of privileged information waives the applicable privilege" (citing *Tobaccoville,* 692 S.E.2d at 531)). However, from the Court's review and based on the other documents already produced by Stiles, the Court finds that these communications were made in the ordinary course of

included, and the communications merely discuss the facts underlying the Incident. Stiles' prior productions included similar communications, for which Stiles claims no privilege applied. Based on the Court's prior finding that these communications were not privileged in Stiles' previous production to Plaintiff, the Court likewise finds that these communications are not privileged and must be produced to Plaintiff. Moreover, it appears that these documents are the source of the screenshot summary including in an email chain from Plaintiff's Exhibit 5 as discussed above, which Stiles previously produced. ECF No. 24 at 6; 22-5.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel [22] as set forth herein.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

August 19, 2026
Spartanburg, South Carolina

---

business based on Stiles' contractual obligations to notify the insurer of a loss and were not prepared in anticipation of ligation or for the purpose of obtaining legal advice. Accordingly, the Court finds these communications were not privileged. *See, e.g., Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 258 (W.D. Va. 1999) (finding that notice of loss documents that were created in the ordinary course of business under the contractual obligations between insurer and reinsurer were not protected from production by the work-product doctrine).